In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00007-CR


______________________________




LARRY DAVID PACK, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 402nd Judicial District Court


Wood County, Texas


Trial Court No. 18,820-2005




 




Before Morriss, C.J., Carter and Moseley, JJ.


Opinion by Chief Justice Morriss



O P I N I O N



 In 2004, when he was still a Wood County Justice of the Peace, Larry David Pack testified
before a Wood County grand jury concerning an allegation that, a week before the 2000 political
primary election, Pack had falsely reported to Child Protective Services (CPS) (1) that Joe Gidney, a
primary candidate for constable in Pack's precinct, had sexually abused a child. An official
investigation into the report of misconduct by Gidney determined that no official action against
Gidney was warranted. Pack was not charged with filing a false report.

 Pack's grand jury testimony, however, resulted in Pack's conviction for aggravated perjury,
the subject of this appeal. The charge was that Pack falsely testified to the grand jury that an
administrator at the Hawkins School (2) telephoned him to report the alleged abuse. 

 Pack raises seven issues on appeal. Because we find the evidence legally and factually
insufficient to support Pack's conviction, we reverse the judgment of the trial court and render a
judgment of acquittal.

 The chain of events culminating in Pack's prosecution for aggravated perjury began with a
telephone call Pack made on or about March 9, 2000, a week before the political primary. In the
presence of Dona Jordan, Pack called the CPS hotline, alleging Gidney had sexually abused A.G.,
a child. (3) Jordan testified that, after Pack concluded his call to CPS, he laughed and then stated, "I'll
teach that son-of-a-bitch to mess with me." 

 Four years later, Pack provided sworn testimony to the grand jury. Pack's grand jury
testimony was not recorded. (4) Marcus Taylor, the Wood County District Attorney at the time,
testified that the grand jury was investigating a claim made by Gidney that Pack committed the
misdemeanor offense of official oppression or official misconduct. The grand jury did not indict
Pack. A subsequent investigation by Texas Ranger Kenny Ray concluded that Pack had made false
statements in his grand jury testimony.

 At Pack's perjury trial, the State presented evidence from nine persons present for Pack's
grand jury testimony June 23, 2004. (5) As discussed more extensively below, these nine witnesses
presented varying versions of Pack's testimony to the grand jury--at least some versions suggesting
that Pack claimed to have received a call from an administrator at Hawkins School who asked Pack
to report the alleged abuse. In an attempt to prove Pack's testimony was false, the State presented
testimony from eight employees of Hawkins School. All eight testifying employees denied reporting
the alleged abuse to Pack. Following a guilty verdict, the jury assessed a sentence of ten years'
imprisonment, but recommended community supervision. The trial court placed Pack on community
supervision for five years. 

 In our review of the legal sufficiency of the evidence, we employ the standards set forth in
Jackson v. Virginia, 443 U.S. 307, 319 (1979). This calls on the court to view the relevant evidence
in the light most favorable to the verdict and determine whether any rational trier of fact could have
found   the   essential   elements   of   the   crime   beyond   a  reasonable  doubt.  Johnson   v.   State,
23 S.W.3d 1, 7 (Tex. Crim. App. 2000). In our review, we must evaluate all of the evidence in the
record,  both  direct  and  circumstantial,  whether  admissible  or  inadmissible.  Dewberry  v.  State,
4 S.W.3d 735, 740 (Tex. Crim. App. 1999). 

 In a factual sufficiency review, we view all the evidence in a neutral light and determine
whether the evidence supporting the verdict is so weak that the jury's verdict is clearly wrong or
manifestly unjust or against the great weight and preponderance of the evidence. Roberts v. State,
No. AP-75,051, 2007 Tex. Crim. App. LEXIS 429 (Tex. Crim. App. Apr. 18, 2007); see Marshall
v. State, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006); see also Watson v. State, 204 S.W.3d 404,
417 (Tex. Crim. App. 2006); Johnson, 23 S.W.3d at 7; Clewis v. State, 922 S.W.2d 126, 134 (Tex.
Crim. App. 1996). Though the mere existence of an alternative reasonable hypothesis does not
render the evidence insufficient, we must consider its existence when determining the sufficiency
of the evidence. See Harris v. State, 133 S.W.3d 760, 763-64 (Tex. App.--Texarkana 2004, pet.
ref'd). Though, in reviewing factual sufficiency, we may second-guess the jury to a limited degree,
our review should still be deferential, and we must reach "a high level of skepticism about the jury's
verdict" before we can reverse for factual insufficiency. Roberts, 2007 Tex. Crim. App. LEXIS 429,
at *2.

 To establish aggravated perjury, the State must prove that the defendant, (1) with intent to
deceive and (2) with knowledge of the statement's meaning, (3) made a false statement under oath,
(4) that was required or authorized by law to be made under oath, (5) in connection with an official
proceeding, and that (6) the false statement was material. Tex. Penal Code Ann. § 37.03 (Vernon
2003); McCullar v. State, 696 S.W.2d 579, 581 (Tex. Crim. App. 1985); Kmiec v. State, 91 S.W.3d
820, 822 (Tex. App.--Houston [1st Dist.] 2002, pet. ref'd). A statement is material "if it could have
affected the course or outcome of the official proceeding." Tex. Penal Code Ann. § 37.04(a)
(Vernon 2003); see Mitchell v. State, 608 S.W.2d 226, 228 (Tex. Crim. App. 1980). A mistaken
belief that the statement was not material is not a defense. (6) Tex. Penal Code Ann. § 37.04(b)
(Vernon 2003). While the State met its burden of proof with most of the above elements, (7) the State
failed to prove that Pack made a false statement. While substantial evidence demonstrated Pack's
misconduct, even hubris, the State failed to prove beyond a reasonable doubt that Pack committed
aggravated perjury. The State failed to carry its burden of proof in two respects: (1) in failing to
prove that Pack testified a Hawkins School administrator reported abuse to him and (2) in failing to
prove that no Hawkins School administrator reported abuse to Pack.

(1) The State Failed to Prove Pack Testified a Hawkins School Administrator Reported Abuse
to Him


 Pack claims the only charge supported by the evidence is that he failed to remember, nearly
four years later, who had called him. According to Pack, the questioning in front of the grand jury
was not precise enough to justify a conviction for perjury, and the State could not prove perjury by
piecing together statements of the defendant and other witnesses. When viewed in a light most
favorable to the prosecution, the State presented legally sufficient evidence of testimony by Pack that
an administrator at Hawkins School reported the alleged abuse to him. The evidence, when viewed
in a neutral light, however, is factually insufficient.

 The State presented evidence from nine persons present at Pack's June 23, 2004, grand jury
testimony. Those witnesses testified as follows, in pertinent part:

 [District Attorney Marcus Taylor]: [Pack] specifically mentioned he received a
call from David Ledkins and from a school
counselor whose name he couldn't recall.

 . . . .


 [Grand Juror Thomas Metcalf]: He wasn't sure. It was either the principal or
the vice-principal or somebody of that nature. 

 . . . .


 [Metcalf]: He thought it was David Ledkins.

 . . . .


 [Grand Juror Arthur Sager]: [W]e were led to believe it was some official
within the school district, maybe a principal or
counselor or something that called him.

 . . . .


 [Grand Juror William Hampton]: Someone. He didn't remember if it was a
school counselor or a principal. He thought it
might have been David Ledkins.

 . . . .


 [Grand Juror John Lafferty]: He thought to the best of his recollection it
was someone from -- some people from
school. He thought it was a counselor or
perhaps a principal. I believe it was a
principal, Mr. Lincolns, Ledkins. I can't recall
his name. It was something like that.

 . . . .


 [Grand Juror Ira Tunnell]: He said that he received the call from an
administrator at the school.

 . . . .


 [Tunnell]: He thought it was the high school principal. 

 . . . .


 [Grand Juror Jimmie R. Dozier]: I think Mr. Pack, you know, indicated that he
had received a complaint either from a school
administrator   or   a   school   principal   that
Mr. Gidney -- well, I guess that [A.G.] had
indicated to someone at the school that she
was being abused by . . . Mr. Gidney.

 . . . .


 [Foreperson Beverly Gunn]: [H]e said it was an administrator or a
counselor and I asked him who that might
have  been  and  that's  when  he  said  to  us,
"Mr. Ledkins."

 . . . .


 [Grand Juror Bettie Morgan]: [H]e said that an administrator had called him
about a situation about a young lady at the
school that Mr. Gidney was having some type
of relationship with.


 [Assistant Attorney General]: And you said that "an administrator." Was it
an administrator at the school?


 [Morgan]: Well, that was his -- that's what he said.


Gunn testified that she had no doubt Pack testified he talked to an administrator. When asked if
Pack testified he had been called by "an administrator with the Hawkins School," Sager responded
in the affirmative. Dozier testified that Pack had been evasive concerning who had reported the
abuse to Pack. 

 Pack contends the questioning did not constitute the precise questioning required to commit
perjury. See Bronston v. United States, 409 U.S. 352, 362 (1973) (construing federal perjury
statute). In Bronston, the United States Supreme Court held that, regardless of the defendant's intent
to deceive or mislead, a witness who speaks the literal truth is not guilty of perjury under the federal
perjury statute. Id. at 358-59. Bronston held specific questioning is required when a witness'
testimony is facially true although misleading. Id.

 Pack cites Bell v. State, 26 S.W.3d 516, 523 (Tex. App.--Houston [1st Dist.] 2000, pet.
ref'd), for the proposition that perjury cannot be proven by piecing together a statement by the
defendant with the statements of others. In Bell, the State alleged the defendant, a district judge
presiding over a trial in which Chevron was a party, stated, in a recorded telephone call to
Williamson, "Chevron needs to know I am its friend," and later denied making the statement under
oath. Id. Although the State admitted the defendant never expressly said to Williamson, "Chevron
needs to know I am its friend," the State argued the defendant "committed perjury by adding together
three statements: (1) the appellant told Williamson he was Chevron's friend; (2) Williamson told
the appellant that she would report the conversation to Chevron; and (3) the appellant said 'okay'
after Williamson said she would report the conversation to Chevron." Id. The court disagreed that
the appellant committed perjury while noting, "[T]he State cites no authority for the proposition that
perjury can be committed by piecing together a statement by the defendant with the statements of
others." Id.

 Viewed in a light most favorable to the State, the evidence is legally sufficient to prove
testimony by Pack that an administrator at Hawkins School asked him to report the alleged abuse. 
Bronston did not require specific questioning in general, but rather held specific questioning is
required when a witness' testimony is facially true although misleading. In Bell, the State was
attributing to the defendant a statement made by Williamson and assented to by the defendant. Bell
is distinguishable from the current case because a statement of another has not been attributed to
Pack. Viewed in a light most favorable to the prosecution, the State is not piecing together a
statement by Pack with the statements of others. A rational juror could have concluded that, beyond
a reasonable doubt, Pack testified an administrator asked him to report the alleged abuse.

 We conclude, however, that the evidence--when viewed in a neutral light--is factually
insufficient. Although Bronston and Bell could be distinguished from the current case, they are
illustrative of the burden the State is required to meet when prosecuting someone for perjury. 
Notwithstanding the lack of a recording of Pack's testimony, the State was obligated to prove
specifically what Pack testified to. When viewed in a neutral light, the State failed to prove Pack's
guilt beyond a reasonable doubt. Similar to Bronston, the State failed to show Pack's testimony was
facially untrue. If Pack merely suggested an administrator might have called him, his testimony,
while misleading, was not facially untrue. The evidence does not establish what questions were
asked of Pack or the specifics of Pack's response. Similar to Bell, the State's theory requires the fact-finder to attribute to Pack the conclusions reached by the grand jurors as to the contents of Pack's
testimony.

 Although the State presented sufficient evidence that Pack intended to mislead the grand jury,
the State was required to prove that Pack offered facially false testimony. The testimony of the grand
jurors presents considerable evidence that Pack was unsure of who called him. When asked what
Pack's first answer was, Metcalf responded, "Most of the time it was that he didn't recall." Metcalf
denied that Pack was pressed for an answer or that the colloquy was confrontational. Hampton
testified Pack claimed he "didn't remember exactly who called." Lafferty testified Pack was "having
a difficult time recalling [who had called him] since it had occurred some years before." Lafferty
also testified he did not "recall [Pack] issuing a statement that anyone actually called him" and that
he concluded Pack "was not positive who called him." Tunnell did not recall Pack ever mentioning
a name of who he thought may have been the person who called him. According to Tunnell, Pack
was clear that he received a call. Dozier testified Pack was unsure who called him. Gunn testified
that Pack "first said he was unsure," but later named Ledkins as someone that might have called him. 
Gunn testified Pack was responding to her question concerning whether Pack "had an idea" who
called him. Morgan testified that it was clear Pack could not remember who called him. None of
the witnesses testified to the precise wording of the questions asked of Pack or the precise wording
of Pack's responses. There are nine versions of what Pack testified to. Although most of the
witnesses testified they recalled Pack claiming an administrator reported the abuse to him, the
witnesses merely testified to their vague recollections of the general thrust of Pack's testimony. 

 Proof that Pack merely suggested an administrator reported the alleged abuse to him is not
sufficient to prove aggravated perjury. Further, proof that Pack's testimony misled the jury into
believing an administrator from Hawkins School reported the allegations to Pack is also insufficient. 
The State was required to prove, beyond a reasonable doubt, that Pack testified an administrator from
Hawkins School reported the allegations. When viewed in a neutral light, the evidence is so weak
that the verdict is clearly wrong and manifestly unjust. Even applying the appropriate high-level-of-skepticism standard (8) as we review the jury verdict to determine whether it was supported by factually
sufficient evidence, we hold that the evidence is factually insufficient that Pack testified an
administrator at Hawkins School asked him to report the alleged abuse.

(2) The State Failed to Prove No Hawkins School Administrator Reported Abuse to Pack

 Pack argues that the State's claim that no administrator from Hawkins School called Pack is
merely an unproven assumption. We agree. The State found itself in the unenviable position of
having to prove a negative beyond a reasonable doubt: that no Hawkins School administrator called
Pack. The State, though, proved only that some administrators at Hawkins School did not call Pack
to report abuse. The State failed to prove who qualified as an administrator at Hawkins School. 
Without proof of the universe of Hawkins School administrators, a rational juror could not logically
conclude that no administrator from Hawkins School asked Pack to report the abuse.

 The State asserts that it presented all potential witnesses who qualified as administrators at
Hawkins School. (9) Regardless of the truth or falsity of the State's assertion, the question before us
is whether it was proven by the evidence. Eight State's witnesses denied reporting the alleged abuse
to Pack: David Ledkins (elementary school principal), (10) Richard Walla (middle school principal),
Cornelia Blair (high school counselor), Judy Humphrey (the alleged victim's social studies teacher),
Sue Holm (the alleged victim's math teacher), Vanessa Choice (assistant high school principal),
Kevin Whitman (high school principal), and Marsha Hagin (superintendent in March 2000). But the
State has not directed us to any evidence in the record, and we have found none, establishing the list
of all administrators of Hawkins School.

 From our own extensive review of the record, we have not discovered sufficient evidence of
how many administrators were employed at Hawkins School or who those administrators were. 
Ledkins provided some testimony concerning the composition of the administration at Hawkins
School. Ledkins testified that Hawkins School, although a small school district, has approximately
100 employees. Hawkins Elementary School, Hawkins Middle School, and Hawkins High School
are all located on the same campus. Hawkins School does not have an assistant superintendent. 
Hawkins School has a superintendent, three principals, and at least two counselors. Ledkins testified
that, at the time of trial, Hawkins School had a counselor for the elementary school and another
counselor for grades six through twelve. Ledkins "believed" that would "have been the case in
2000." Only one of the two school counselors testified. (11) The record does not contain any evidence
concerning whether the counselor who did not testify reported the alleged abuse to Pack. When asked who he would say are administrators at Hawkins School, Ledkins named the
superintendent, the special programs coordinator, the three principals, and possibly the athletic
director. The record does not contain evidence that neither the "special programs coordinator" nor
the "athletic director" reported the allegations to Pack. Further, the record affirmatively establishes
that Hawkins School has at least one assistant principal. Choice, the assistant high school principal,
testified at trial. Ledkins was never asked whether Hawkins School had any other assistant
principals or, if so, how many assistant principals there were. Because there is clearly at least one
assistant principal at Hawkins School, Ledkins' testimony is clearly incomplete.

 Even assuming Ledkins' list is complete, there is no evidence in the record from or
concerning the "special programs coordinator," the athletic director, or one of the counselors. In the
absence of such proof, the State merely proved that some administrators at Hawkins School did not
report abuse to Pack.

 At oral argument before this Court, the State argued the evidence did establish that no
administrator called Pack because (1) an administrator from each of the three schools at the Hawkins
School campus denied calling Pack, (2) reporting the incident to Pack would violate the school's
policy, (3) Ray testified he interviewed all administrators at Hawkins School, and (4) Pack was
inconsistent concerning who reported the incident. 

 While an administrator at each of the three schools on the Hawkins School campus did deny
reporting the abuse to Pack, a rational juror could not conclude, beyond a reasonable doubt, based
on the evidence in the record, that no administrator requested Pack to report abuse to CPS. One
cannot logically conclude, beyond a reasonable doubt, from the testimony of only some of the
administrators at Hawkins School, that no administrator called Pack.

 The State presented evidence that the standard procedure at Hawkins School was to report
alleged abuse to a school administrator. Blair testified the standard procedure when an employee
of the school obtains evidence of potential abuse is to make a report to the principal. According to
Blair, she would have known if a report of potential abuse had been made to "anyone else" at
Hawkins School. Humphrey testified the standard procedure is for an employee to report the
potential abuse to an administrator or counselor. Hagin testified it would be a violation of school
policy to report potential abuse to Pack. Sue Holm acknowledged a person could report alleged
abuse himself or herself, but testified she would make a report to the principal. Ledkins testified
that, as a prinicipal, he would normally inform the superintendent if he reported any allegations of
abuse. (12) There is only a weak correlation between a standard policy and proof beyond a reasonable
doubt that the policy was followed. Proof that Pack's version of events would violate the school's
standard policy is not sufficient for a rational juror to reach the verdict in question. 

 Ray testified he interviewed "[c]urrent and former" administrators at Hawkins School, as well
as "everyone implicated in making that phone call" and some teachers. Ray admitted he did not
interview all of the teachers at Hawkins School, but was never asked if he interviewed all the
administrators. Ray testified he failed to find, in his investigation, anyone who admitted making an
abuse report to Pack. Ray testified he interviewed eight persons who qualified as an administrator,
counselor, principal, or teacher. We note that, if two counselors are added to the list provided by
Ledkins, the total comes to eight. This number, however, does not include any assistant principals. (13) 
Ray did not specify which eight individuals he interviewed. The evidence that Ray interviewed eight
persons does not establish that he interviewed all the administrators. Even if Ray's testimony that
none of the individuals he interviewed admitted reporting abuse to Pack is competent evidence, the
record fails to establish Ray interviewed all the administrators at Hawkins School.

 Finally, the fact that Pack was inconsistent concerning who reported the incident does not
establish the falsity of his testimony beyond a reasonable doubt. The record does contain evidence
that Pack's testimony before the grand jury differed from his original version of the events. Jordan
testified that Pack claimed, during the telephone conversation with CPS, that he had received
numerous complaints from neighbors. Snell testified that Pack indicated the report had come from
"[p]eople who know the family, but would not disclose the identity of the persons that gave him the
information." Sherry Lynn, the CPS Specialist who investigated Pack's allegations, testified that
Pack refused to identify to her who had made the report to him and claimed the person or persons
wanted their identity to remain confidential. Pack, though, was not charged with making a false
report. The fact that Pack told inconsistent stories is not sufficient evidence to allow one to conclude
that, beyond a reasonable doubt, Pack's testimony was false as charged.

 While the State may have presented testimony of all of the administrators from Hawkins
School as it alleges, the evidence fails to reflect that fact. Without presenting evidence of the
universe of administrators at Hawkins School and evidence that none of those persons reported the
alleged abuse to Pack, a rational juror could not conclude beyond a reasonable doubt, even when
viewed in a light most favorable to the prosecution, that Pack gave the false testimony as charged. 
Further, the evidence, viewed in a neutral light, is so weak that the jury's verdict is clearly wrong and
manifestly unjust. The evidence of the falsity of Pack's testimony is legally and factually
insufficient.

 Because we have found the evidence to be insufficient, it is not necessary for us to decide
Pack's remaining points of error. (14) We reverse the judgment of the trial court and render a judgment
of acquittal.


 Josh R. Morriss, III

 Chief Justice


Date Submitted: March 28, 2007

Date Decided: April 25, 2007


Publish
1. Child Protective Services is a division of the Texas Department of Family and Protective
Services. At the time of the events in question, the department's official name was the Texas
Department of Protective and Regulatory Services. 
2. It appears that, as used by residents of the area, "Hawkins School" is an inclusive term which
collectively refers to all of the schools operated by the Hawkins Independent School District and
located on the same campus: Hawkins Elementary School, Hawkins Middle School, and Hawkins
High School. We use the term as we understand the locals use it.
3. Dan Snell, an employee with the Statewide Intake Division of CPS, testified he received a
call from a person who identified himself as Larry Pack. Snell testified the person reported Gidney
was abusing A.G., a child. At trial, A.G. denied that Gidney had ever abused her. A.G. testified
Gidney had been investigated for allegedly abusing her twice--the previous investigation occurring
when A.G. was "very little." 
4. Although Article 20.012 of the Texas Code of Criminal Procedure requires that grand jury
testimony be recorded, such was not the ordinary practice in Wood County. See Tex. Code Crim.
Proc. Ann. art. 20.012 (Vernon 2005).
5. Ray testified that Richard Hicks, a grand juror present at the grand jury meeting, was not
medically able to attend court. The State claims nine of the ten people present at the grand jury
proceedings testified.
6. Pack alleges the trial court erred in submitting to the jury the issue of whether the statement
was material. Pack cites Yarbrough v. State, 617 S.W.2d 221, 228 (Tex. Crim. App. 1981), as
authority for the proposition that the issue of whether a statement is material is a question of law. 
See Tex. Penal Code Ann. § 37.04(c) (Vernon 2003). But the United States Supreme Court has
held whether a statement is material must be decided by the jury. United States v. Gaudin, 515 U.S.
506, 522 (1995) (finding refusal to submit issue of materiality unconstitutional); Ward v. State, 938
S.W.2d 525, 530 (Tex. App.--Texarkana 1997, pet. ref'd). The trial court did not err in submitting
the issue of materiality to the jury.
7. Taylor testified that Pack made the statement under oath. The jury could reasonably infer
that the proceedings were official and the oath was authorized by law from the evidence. Given that
no indictment was issued by the grand jury and given that the testimony was directly related to the
offense being investigated, a rational juror could conclude that, beyond a reasonable doubt, the
statement was material.
8. See Roberts, 2007 Tex. Crim. App. LEXIS 429, at *2 (appellate court must reach "high level
of skepticism about the jury's verdict" before reversal for factual insufficiency warranted).
9. The State also argues that Pack failed to prove someone called him. This argument, of
course, is contrary to the presumption of innocence and the appropriate burden of proof.
10. Ledkins was also a grand juror on the grand jury before which Pack was accused of
committing aggravated perjury. However, Ledkins was not present on the day Pack testified. 
11. Ledkins testified he believed Hawkins School had two counselors at the time of the events
in question. Blair, the counselor at Hawkins School for grades six through twelve in March 2000,
testified there was another part-time counselor in March 2000. The record does not establish the
identity of the part-time counselor. The record suggests the part-time counselor no longer worked
at Hawkins School. Mr. Unke, currently a part-time counselor at Hawkins School, was not employed
by the district at the time Pack made the report to CPS.
12. We also note that Ledkins testified A.G.'s school records do not contain any reference to
the allegations in question. According to Blair, such allegations might or might not be entered into
a student's personal records, depending on the facts of the case. 
13. We also note Ray did interview Unke, who was not employed by Hawkins School in March
2000. The record is not clear concerning whether Unke was included in the above-mentioned eight
individuals. Ray testified he interviewed Humphrey, A.G.'s social studies teacher, and Holm, A.G.'s
math teacher. The record is not clear whether these interviews were included in the above-mentioned eight interviews.
14. In his remaining points of error, Pack argues the trial court erred when it allowed the State,
over defense objection, to delete language in the indictment during trial; when the trial court refused
the defense's request for ten days to respond to the deletion; when the trial court did not suppress the
State's evidence of Pack's testimony before the grand jury when the testimony was not recorded
pursuant to Article 20.012 of the Texas Code of Criminal Procedure; and when the trial court
determined by letter whether the grand jurors, who witnessed Pack's testimony, desired to discuss
the case with defense counsel rather than allowing defense counsel to contact the former grand jurors
directly.