

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-07-154-CR

GAYLA BETH DODSON                                                          APPELLANT

V.

THE STATE OF TEXAS                                                              STATE

------------

FROM THE 213TH DISTRICT COURT OF TARRANT COUNTY

------------

## OPINION

------------

Appellant Gayla Beth Dodson was charged by indictment with tampering with a governmental record and aggravated perjury. The jury acquitted Appellant of tampering with a governmental record and convicted her of aggravated perjury. The trial court sentenced her to ten years' confinement in the Institutional Division of the Texas Department of Criminal Justice and a

$5,000 fine. The trial judge suspended imposition of confinement and placed her on community supervision for ten years.

Appellant brings three issues on appeal, arguing that the trial court erred in admitting inadmissible hearsay, that the evidence is legally insufficient under article 38.18 to support the verdict, and that the trial court erred by instructing the jury on materiality. For the reasons set forth below, we affirm the trial court's judgment.

### STATEMENT OF FACTS

On November 23, 2002, Appellant was working as a dispatcher for the Young County Sheriff's Department, which provides dispatch services to the Graham Police Department. Graham police officer Michael Viehmann, who worked the 3:00 p.m.–11:00 p.m. shift, attempted to contact the dispatcher several times while on patrol. Appellant responded slowly initially and eventually did not respond at all. After Viehmann told another officer over the radio that dispatch was not responding to him, Appellant immediately told Viehmann to come into the Young County Sheriff's office. Viehmann had been talked to by his supervisor in the past about having problems with other dispatchers, so he had turned on his car's video and audio recording system before talking to Appellant.

2

At dispatch, Appellant confronted Viehmann about what he had said over the radio. Viehmann called his supervisor, Assistant Chief Tony Widner, and told him about the problem. Appellant also spoke with Widner at that time. The 911 system was set up to record all radio traffic in addition to incoming 911 calls, and both Viehmann and Widner requested a copy of the radio traffic recording from that evening.

Widner started an internal affairs investigation the next working day in response to the incident. In the course of that investigation, Viehmann made a written statement and turned over the recording that he had made. As for the 911 tape, Widner declined to go to dispatch and listen to the original dispatch tape there; he instead again requested a copy. At some point when he called the sheriff's office for a copy, he heard Appellant in the background say, "If he wants to listen to the tape, he can come over here and listen to it." When Widner did not receive any tape from Appellant, he called to ask Sheriff Pettus about getting a copy of the tape; Widner was told by dispatcher Teresa McGehee that the copy had been made and that the sheriff had it. Pettus personally handed the tape to Widner.

The tape was about two or three minutes long and did not include all the traffic stops that were recorded on Viehmann's in-car camera. After discussing the tape with his chief, Jim Nance, Widner asked Pettus to watch Viehmann's

3

videotape. At trial, Widner testified that after seeing and listening to the tape, Pettus stated, "I guess I didn't get the whole story," and "I guess I have been lied to." The internal affairs investigation into Viehmann's conduct was closed. The tape used by Viehmann was put back into rotation to be re-used.

In 2004, Viehmann discussed the events with Texas Ranger Aaron Dwayne Williams while the two were having lunch. Williams then began an investigation into the incident. He presented his findings to the Young County grand jury. The grand jury heard testimony from Richard Ferguson, a Graham police officer, that he had heard the radio conversations between Appellant and Viehmann, and that a couple of days later, he saw Appellant and Carolin Hight Teague at dispatch with a tape recorder hooked up to the 911 system, taping an edited copy of what was playing on the system. Ferguson recognized what he heard as the events of November 23. Ferguson gave this same testimony at trial.

The tape used by Viehmann was turned over to Williams, but by then it had already been taped over. In February 2003, the 911 system had been replaced, and the old system had been put into a storage room. In April 2004, Jan Hammond, the IT administrator for Young County, was asked to locate the old system and the tapes that had been used with it. She found the machine

4

in Chief Deputy Gary Barnett's office on the floor. The top had been taken off of the machine, and it looked to Hammond as though it had been pried off.

Hammond found the tapes on a shelf in the storage room. That machine recorded on two tapes simultaneously—an "A" tape and a "B" tape. The "A" tape from November 2002 had "bad" written on it and had been erased. The "B" tape was turned over to Williams.

Appellant testified to the grand jury that on the night of the confrontation with Viehmann, she called Teague, another employee of the Young County Sheriff's office, because she was upset, and Teague came to the station. Appellant further testified that she did not remember anyone asking for a copy of a tape, if anyone had asked her to make a tape, she would have asked someone else to do it because she did not know how to make a copy, she did not make a copy of a tape and did not remember assisting anyone to do so, and she did not know who made the tape. She also stated that she did not erase the original 911 tape and did not know who did. Her grand jury testimony was read to the jury at trial.

Teague testified to the grand jury that on November 23, 2002, she was assigned to the patrol division but was not working that day. After receiving a call from Appellant that night, she ran dispatch for Appellant, who was upset. Teague testified that she did not make the recording, did not assist in making

5

the recording, and was not present when it was made.  She testified that she would not call Ferguson a liar, that "if he saw [her] making [the tape], then evidently [she] was," but she did not remember making the tape.  She also stated that she did not erase the original 911 tape.  Her grand jury testimony was read to the jury at trial.

At trial, four people who had worked with Ferguson, including Ferguson's supervisor, testified that Ferguson's reputation in the community for truth and veracity was bad.

## LEGAL SUFFICIENCY OF THE EVIDENCE UNDER ARTICLE 38.18

Appellant argues in her second issue that the evidence is legally insufficient under article 38.18 of the code of criminal procedure to support the verdict.  Article 38.18(a) provides that "[n]o person may be convicted of perjury or aggravated perjury if proof that [her] statement is false rests solely upon the testimony of one witness other than the defendant."[1]  Appellant argues that article 38.18 is controlled by article 38.17, which provides, "In all cases where, by law, two witnesses, or one with corroborating circumstances, are required to authorize a conviction, if the requirement be not fulfilled, the court shall instruct the jury to render a verdict of acquittal, and they are bound by the

---

[1] TEX. CODE CRIM. PROC. ANN. art. 38.18(a) (Vernon 2005).

6

instruction."[2] The State argues that article 38.18 is merely "a statutorily imposed sufficiency review and is not derived from federal or state constitutional principles that define the legal and factual sufficiency standards," much like the accomplice witness rule.[3] The State is only partially correct. The accomplice witness rule specifically states that in addition to an accomplice witness's testimony, there must be evidence tending to connect the defendant to the offense.[4] The accomplice witness rule is not a true sufficiency test; it merely instructs in the determination of sufficiency. That is, the accomplice witness's testimony must be disregarded in determining whether there is other evidence tending to connect the defendant to the offense.[5] The additional evidence does not have to be legally or factually sufficient to sustain the conviction.[6] It need only tend to connect the defendant to the offense.[7]

Article 38.18 is slightly different. It instructs that to sustain a conviction

---

[2] *Id.* art. 38.17.

[3] *See Cathey v. State*, 992 S.W.2d 460, 462–63 (Tex. Crim. App. 1999), *cert. denied*, 528 U.S. 1082 (2000).

[4] TEX. CODE CRIM. PROC. ANN. art. 38.14 (Vernon 2005).

[5] *Solomon v. State*, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001).

[6] *Id.*

[7] *Id.*

for perjury or aggravated perjury, the State must produce more evidence than the testimony of the defendant and another witness.[8] But there is no corroboration requirement.[9]

The State produced the testimony of Richard Ferguson. In addition, the State offered Appellant's grand jury testimony, and that of Teague, "including their vacillating and implausible testimony and sudden loss of memory after being confronted with the fact that Ferguson claimed to have seen them making the record, which the grand jurors themselves apparently found to be incredible." The State also points to testimony from multiple witnesses that Appellant and Teague were together in the dispatch office that Saturday night after Widner had requested a copy of the 911 tape, as well as evidence from the B tape that Widner had made the request and that Appellant had told the sheriff about it.

The State also points to testimony that both Teague and Appellant attempted to shift the blame to another dispatcher and testimony regarding the B tape and its contents that proved that Appellant had testified untruthfully

---

[8] TEX. CODE CRIM. PROC. ANN. art. 38.18.

[9] *See id.; see also Martin v. State*, 13 S.W.3d 133, 140 (Tex. App.—Dallas 2000, no pet.); *Tamayo v. State*, 924 S.W.2d 213, 216 n.1 (Tex. App.—Beaumont 1996, no pet.).

about other aspects of the night's events. Additionally, the State relies on testimony from Ranger Williams and from the defense expert that corroborated the background voices on the tape, one of which Williams testified he recognized as Ferguson's. The State also directs us to testimony from multiple witnesses that Appellant was essentially the instigator of the initial dispute and had motive to alter the tape to make herself look better and shift blame to Viehmann, Teague was her good friend, and the two of them had the opportunity to make the cassette tape that Saturday night before the tape appeared in the sheriff's office on the following Monday morning.

The State argues that the jury was able to consider the entirety of the evidence and compare Teague's and Appellant's testimony and their similar losses of memory, their demeanor, and their grand jury testimony. We hold that the evidence recited above is sufficient to satisfy article 38.18. We therefore overrule Appellant's second issue.

### ADMISSIBILITY OF HEARSAY

In her first issue, Appellant argues that the trial court erred in admitting, over objection, a hearsay statement of Sheriff Pettus, who did not testify at trial. We have carefully examined the record. Assistant Chief Widner and Jim Nance were allowed to testify over Appellant's hearsay objection that, at the meeting they had with Sheriff Pettus, after listening to the cassette tape, Pettus

9

stated, "I guess I've been lied to." As Appellant argues, the statement is clearly hearsay. The State conceded at trial that the statement was hearsay by offering it as an exception to the prohibition against hearsay evidence. The State offered the statement as a present sense impression, evidence of then existing mental or emotional state, and an excited utterance.[10]

The statement satisfies none of those exceptions. The State argues that Appellant failed to preserve this complaint. Appellant did not object after the first time the statement was offered. Instead, she objected earlier, in the middle of the statement. The witness testified that the sheriff said, "I guess I didn't get the whole story. I guess—." Appellant objected on hearsay grounds, her objection was overruled, and she requested a limiting instruction. Afterward, the rest of the statement came in without additional objection. Under the facts of this case, we hold that the objection made mid-sentence also applied to the rest of the statement that was admitted after the objection.

Appellant also timely objected the second time the statement was made. But Appellant did not object to the third mention of the statement. Because Appellant did not object to the third admission of the statement, she has not

[10] *See* TEX. R. EVID. 803(1), (2), (3).

preserved error.[11]  We overrule Appellant's first issue.

## CHARGE ERROR

In her third issue, Appellant contends that the trial court improperly instructed the jury that the statement in question, if any, made by Appellant, if it was made, would be material.  Appellant argues that because materiality is an element of the offense,[12] an instruction that the statement in question was material instructed the jury on an element to be determined by the jury and that the instruction therefore violated Appellant's right to due process under the Constitution of the United States.  We note that section 37.04(c) of the penal code provides that materiality is a question of law.[13]  But, as Appellant points out, the United States Supreme Court has held that whether a statement is

---

[11] *See Fuentes v. State*, 991 S.W.2d 267, 273 (Tex. Crim. App.), *cert. denied,* 528 U.S. 1026 (1999); *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998); *Ethington v. State*, 819 S.W.2d 854, 858–59 (Tex. Crim. App. 1991).

[12] *See* TEX. PENAL CODE ANN. § 37.04 (Vernon 2003).

[13] *Id.* § 37.04(c).

material must be submitted to the jury.[14]

The case before this court is distinguishable in part from *Gaudin* because Appellant's jury was instructed in the application paragraph that it must determine the materiality of the statement. But the jury was also instructed that the statement under consideration was, in fact, material and that the only issue was whether Appellant had made the statement. We therefore hold that the charge was erroneous.

Appellant timely objected to this error, so we must determine whether Appellant suffered any harm from the improper instruction.[15] A properly preserved error will require reversal as long as the error is not harmless.[16] In making this determination, "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other

---

[14] *United States v. Gaudin*, 515 U.S. 506, 522–23, 115 S. Ct. 2310, 2320 (1995) (holding refusal to submit issue of materiality to jury unconstitutional); *see also Ward v. State*, 938 S.W.2d 525, 530 (Tex. App.—Texarkana 1997, pet. ref'd) (noting that section 37.04(c) is most likely not good law after *Gaudin*).

[15] *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g).

[16] *Id.*

12

relevant information revealed by the record of the trial as a whole."[17]

Appellant argues that reversal is mandated by the Fifth Circuit decision in *U.S. v. Pettigrew*.[18] *Pettigrew* addressed the complete withholding of the issue of materiality from the jury, resulting in the jury's rendering no verdict as to that element of the offense.[19] In the case now before this court, however, the jury did render a verdict as to the materiality element. But the jury was instructed to render that verdict if they found Appellant had made the statement in question.

The State argues that materiality was never an issue in the case. Materiality was unchallenged and uncontested. Based on our review of the record, we agree. Because materiality was never an issue in this case, we hold, under the limited and unique facts of this case, that Appellant suffered no harm from the erroneous instruction. We therefore overrule Appellant's third issue.

### CONCLUSION

Having overruled Appellant's three issues, we affirm the trial court's judgment.

---

[17] *Id.*; *see also Ovalle v. State*, 13 S.W.3d 774, 786 (Tex. Crim. App. 2000).

[18] 77 F.3d 1500 (5th Cir. 1996).

[19] *Id.* at 1511.

                                                    LEE ANN DAUPHINOT
                                                    JUSTICE

PANEL:  CAYCE, C.J.; DAUPHINOT and MCCOY, JJ.

      CAYCE, C.J. concurs without opinion.

PUBLISH

DELIVERED: August 21, 2008