Brent Lee WARD, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–95–00189–CR.

Court of Appeals of Texas, Texarkana.

Submitted Jan. 16, 1997.

Decided Jan. 17, 1997.

Rehearing Overruled Feb. 19, 1997.

Henry C. Paine, Jr., Denton, for appellant.

Lisa Tanner, Austin, for appellee.

Before CORNELIUS, C.J., and GRANT and ROSS, JJ.

## OPINION

ROSS, Justice.

Brent Ward appeals from his conviction of committing aggravated perjury before a grand jury. After a trial, a jury found him guilty and assessed punishment at three years' imprisonment and a $5,000.00 fine.

Ward contends on appeal that his conviction should be reversed for the following reasons: 1) it violates his protection against double jeopardy; 2) the evidence is insufficient to support the verdict; 3) the allegedly perjurious statements were not material to the grand jury's investigation; 4) the State

failed to inform him that he was a suspect in the case before he testified; and 5) the State failed to warn him of his right against self-incrimination before he testified.

The appellant's contentions are overruled, and the judgment is affirmed.

## Background

Brent Ward was subpoenaed to testify before an Upshur County grand jury in connection with its investigation of the disappearance of Kelly Wilson.[1] Ward is a cousin and friend of Chris Denton, Wilson's former boyfriend. Denton was considered a potential suspect, and it appears that Ward was considered a potential source of information about Wilson's disappearance.

Ward was questioned two separate times before the grand jury. The first time was on May 7, 1993, when he told the jurors, under oath, that he knew nothing about the disappearance of Kelly Wilson and that on the date of her disappearance, January 5, 1992, he had worked at his place of employment, Holly Lake Ranch, until about 4:00 p.m. The second time Ward appeared before the grand jury was on May 21, 1993, when he again testified, under oath, that on the date of Wilson's disappearance he had been at work until around 4:00 p.m. and that he knew nothing about what had happened to her.

The State brought two counts of aggravated perjury charges against Ward in one indictment. The first count alleges that on May 7, 1993, he lied to the grand jury when he stated under oath that he was at work at Holly Lake Ranch on the day of Kelly Wilson's disappearance on January 5, 1992. The second count alleges that on May 21, 1993, he lied to the grand jury when he testified under oath that he was at work on the day of Kelly Wilson's disappearance on January 5, 1992.

At the trial, both counts of the indictment were tried together and the State relied on the same evidence to prove that Ward was not at work on January 5, 1992. The trial jury acquitted Ward under Count One, but convicted him under Count Two.

## I.

## Double Jeopardy Contentions

Ward first contends that his conviction under the second count of the indictment is barred by double jeopardy considerations. We begin with the Double Jeopardy Clause of the Fifth Amendment, which provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. amend. V.

■ It protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense. *United States v. Halper,* 490 U.S. 435, 441, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487, 496 (1989); *Ex parte Kopecky,* 821 S.W.2d 957, 958 (Tex.Crim.App.1992); *Coleman v. State,* 918 S.W.2d 39, 42–43 (Tex.App.—Houston [1st Dist.] 1996, pet. granted).

Ward contends that the first analysis prohibits his later conviction for an offense for which he had been acquitted. His argument is based upon the premise that, since the allegedly perjurious statement was made to the grand jury on two separate occasions, an acquittal for the first occasion prohibits a later prosecution for making the same perjurious statement again to that same grand jury.

■ To determine whether jeopardy attached, the court must inquire whether each offense contains an element not contained in the other. *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932). If a different element is present, double jeopardy does not attach. *Id.* However, if each element of the offense in the first indictment is identical to the offense in the second indictment, double jeopardy attaches and bars successive prosecutions. *Id.*[2]

---

1. Wilson, a seventeen-year-old high school senior, disappeared from her workplace at about 8:30 p.m. on January 5, 1992. She has not been seen since then, and foul play is suspected. The case is unsolved.

2. The Texas Constitution provides: "No person, for the same offense, shall be twice put in jeopardy of life or liberty, nor shall a person be again put upon trial for the same offense, after a ver-

The essential elements relevant to a double jeopardy inquiry are those of the charging instrument, not of the penal statute itself. Although statutory elements will always make up part of the accusatory pleading, additional nonstatutory allegations are necessary in every case to specify the unique offense with which the defendant is charged. *Parrish v. State*, 869 S.W.2d 352, 354 (Tex. Crim.App.1994). The relevant factors to focus on in a charging instrument include the time and place of the offense, the identity of the defendant, the identity of the complainant, and the manner and means used in committing the offense. *Id.*

The basic concept of double jeopardy does not apply in this case because the "same offense" was not involved. The allegedly perjurious statement was made on two different dates. Thus, he was not prosecuted twice for the same offense.

The Fifth Amendment prohibition against double jeopardy also includes collateral estoppel, and that concept requires a somewhat different analysis. *Ladner v. State*, 780 S.W.2d 247, 250 (Tex.Crim.App. 1989); *Ex parte Daniel*, 781 S.W.2d 412, 414 (Tex.App.—Houston [1st Dist.] 1989, pet. ref'd). Collateral estoppel is the principle that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties. *Ashe v. Swenson*, 397 U.S. 436, 443–45, 90 S.Ct. 1189, 1194–95, 25 L.Ed.2d 469, 475–76 (1970) (insufficient evidence to convict defendant of the robbery of one person at a poker table collaterally estopped state from trying the defendant for same offense against another person at the same poker table).

*Ashe* mandates two inquiries: First, what facts were necessarily determined in the first lawsuit? Second, has the prosecution in a subsequent trial tried to relitigate facts necessarily established against it in the first trial? *Dedrick v. State*, 623 S.W.2d 332, 336 (Tex.Crim.App. [Panel Op.] 1981).

This related concept does not apply to the present case because the *Ashe* doctrine of collateral estoppel only applies where there are two trials, and not where a single trial involving two counts is involved. *Hite v. State*, 650 S.W.2d 778, 784 n. 7 (Tex.Crim. App.1983).

As placed before this Court and argued by the appellant, this case instead is more accurately described as a case involving an inconsistent verdict. This concept is little-explored in Texas jurisprudence, but there is substantial federal guidance in this area. The Corpus Christi Court of Appeals directly addressed this issue in *Ruiz v. State*, 641 S.W.2d 364, 366 (Tex.App.—Corpus Christi 1982, no pet.). In *Ruiz*, the court acknowledged the lack of state authority on this question and applied the federal rule that "inconsistent verdicts do not require reversal." (Citing *Dunn v. United States*, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932)). "Where a multi-count verdict appears inconsistent, the appellate inquiry is limited to a determination of whether the evidence is legally sufficient to support the counts on which a conviction is returned. What the jury did with the remaining counts is immaterial." *Ruiz*, 641 S.W.2d at 366.

Since *Ruiz*, the *Dunn* decision has been revisited by the Supreme Court in *United States v. Powell*, 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984). In *Powell*, the Court stated that the rationale behind this concept is based upon entirely different factors than those supporting res judicata. In short, these cases establish "the unreviewable power of a jury to return a verdict of not guilty for impermissible reasons." *Id.* at 63, 105 S.Ct. at 476, 83 L.Ed.2d at 467. If such inconsistent verdicts are reached, however, "[t]he most that can be said ... is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt." *Id.* at 63, 105 S.Ct. at 475, 83 L.Ed.2d at 468.

The Court concluded that since the state has no recourse in such a situation because of its inability to appeal, public policy provides that no double jeopardy protections are invoked. A sufficiency of the evi-

dict of not guilty in a court of competent jurisdiction." Tex. Const. art. I, § 14.

dence review of the count upon which the defendant is found guilty is sufficient to safeguard the defendant. *Id.; see* Andrew Leipold, *Rethinking Jury Nullification,* 82 VA. L.REV. 253, 276–77 (1996); Janet R. Ferguson & Alison Kennamer, *Criminal Law,* 24 TEX. TECH L. REV. 533, 545–47 (1993); Jeffrey B. Keck & William Randell Johnson, *Criminal Procedure: Trial and Appeal,* 40 SW.L.J. 583, 644–45 (1986). Thus, even if an inconsistent verdict is shown by the jury's verdict in this case, no error has been shown, and our review of the sufficiency of the evidence below is sufficient to safeguard Ward on appeal.

Ward's contention of double jeopardy is overruled.

## II.

### Insufficiency of the Evidence

■ Ward next contends that the evidence was insufficient to support the verdict because it did not establish that he had not worked on January 5, 1992. In our review of the legal sufficiency of the evidence, we employ the standards set forth in *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979), and *Geesa v. State,* 820 S.W.2d 154 (Tex.Crim.App. 1991), and look to see whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. In our review of the factual sufficiency of the evidence, we view all the evidence and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Clewis v. State,* 922 S.W.2d 126 (Tex.Crim.App.1996); *Lisai v. State,* 875 S.W.2d 35, 37 (Tex.App.—Texarkana 1994, pet. ref'd); *Stone v. State,* 823 S.W.2d 375, 381 (Tex.App.—Austin 1992, pet. ref'd, untimely filed).

Ward's contention is focused upon the language of the second count of the indictment, which alleged that he made a false statement under oath, "namely that he was at work on the day of Kelly Wilson's disappearance on January 5, 1992, ... such statement being false in that the defendant did not in fact

work on the day of Kelly Wilson's disappearance...." He contends that the State's evidence that he was not at work at Holly Lake Ranch, his place of regular employment, is insufficient on its face to prove the allegation stated by the indictment: that he was not at work.

■ The first question is whether the State was required by the indictment to prove that Ward was not at work generally, rather than merely not at work at Holly Lake Ranch on January 5, 1992. Ward contends that in the absence of conclusive proof by the State that he was not working anywhere on that date, the State has not met its burden of proof. We disagree.

The term "at work" has an understood meaning that necessarily involves working at a person's place of employment. As noted previously, both counts of the indictment were tried together and the State relied on the same evidence to prove that Ward was **not** at work on January 5, 1992. The uncontroverted and uncontested evidence is that Ward was employed by Holly Lake Ranch and, from the context of all the evidence, when he told the grand jury on May 21, 1993, that he was "at work," that is the only place to which he could have been referring.

To require the State to provide proof to negate every possible place that Ward might have worked on that day would effectively reinstate the now discredited analytical construct that focused on the existence of an "outstanding reasonable hypothesis inconsistent with the guilt of the accused." *Geesa v. State,* 820 S.W.2d 154 (Tex.Crim.App.1991). We will not resurrect this analytical tool in the face of its rejection by the Court in *Geesa.*

■ Having concluded that the State was required by the indictment to prove that Ward was not at work at his place of employment, and using that conclusion as a springboard for review, we now look to see if the evidence is sufficient to support the jury's finding.

First, Ward's time sheet from Holly Lake Ranch reflected that he had not worked on the weekend that included Sunday, January 5, 1992, the day of Kelly Wilson's disappear-

ance. Several witnesses testified that the time sheets were not a reliable method to show that a person was actually at work on a particular day. These witnesses, however, testified to this conclusion without any factual basis as to why the time sheets were not reliable for that purpose.

There is also testimony from Ward's supervisor that he was not at work on January 5, 1992, and that Ward had asked him to tell law enforcement officials that he was at work on that day. The supervisor testified that he informed Ward that he would not lie for him. A coworker, with whom Ward alternated working weekends, overheard this conversation and testified that when he heard it, he knew Ward was asking his supervisor to lie because the co-worker remembered that he, and not Ward, had worked on that particular weekend.

Ward also suggests that he was cutting firewood on the Holly Lake Ranch property on his own time; thus, he was at his work place, but not working for his employer. There is testimony to support this position, but there is also testimony that he was not there at all on the date in question.

Conflicts in the evidence are to be resolved by the jury. In doing so, it may accept one version of facts and reject another, or reject any of a witness' testimony. *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex.Crim.App. [Panel Op.] 1981). In so doing, it is the jury's responsibility to judge the credibility of the witnesses and the weight to be given their testimony, and it may resolve or reconcile conflicts in the testimony, accepting or rejecting such portions thereof as it sees fit. *Banks v. State*, 510 S.W.2d 592 (Tex.Crim. App.1974).

The jury concluded from conflicting evidence that Ward was not at work on January 5, 1992. We cannot say that it reached this result against the great weight and preponderance of the evidence. This point of error is overruled.

### III.

### Materiality of the Perjurious Statements

Ward next contends that the trial court erred by failing to dismiss because the alleg-edly perjurious statements were not material. This contention is based upon Tex. Penal Code Ann. §§ 37.03, 37.04 (Vernon 1994).

### § 37.03. Aggravated Perjury

(a) A person commits an offense if he commits perjury as defined in Section 37.02, and the false statement:

(1) is made during or in connection with an official proceeding; and

(2) is material.

. . . .

### § 37.04. Materiality

(a) A statement is material, regardless of the admissibility of the statement under the rules of evidence, if it could have affected the course or outcome of the official proceeding.

(b) It is no defense to prosecution under Section 37.03 (Aggravated Perjury) that the declarant mistakenly believed the statement to be immaterial.

(c) Whether a statement is material in a given factual situation is a question of law.

The State correctly notes that subdivision (c) is most likely not good law in light of *United States v. Gaudin*, 515 U.S. ——, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995), which held that when the materiality of false statements made under oath is an element of the charged offense, the Fifth and Sixth Amendments mandate that the issue be decided by a jury rather than as a matter of law.

The point of error, however, focuses not upon the instruction to the jury concerning materiality, but upon the trial court's denial of a pretrial motion to dismiss the indictment because the complained-of testimony was not material as a matter of law. Thus, he argues that, under the evidence presented, only one result could have been reached.

■ At the pretrial hearing on materiality, the district attorney testified that he wanted Ward to testify about his activities on the specific day so that he could try to determine whether the suspect at that point, Chris Denton, had an alibi for his whereabouts on the night that Kelly Wilson disappeared. The evidence also showed, however, that Ward testified that after work he picked

Denton up and they went to get hamburgers. He then testified that he had dropped Denton off and gone to his own home before 8:00 p.m. on January 5, 1992. This time is critical because at about 8:00 p.m. was the last time that Wilson was seen alive. Thus, his testimony failed to provide Denton with an alibi for the relevant time frame.

The testimony and argument of counsel also show that Ward testified he and Denton were riding around in Denton's truck, but there was other testimony that they were in fact using his car because the truck was in a repair shop at the time.

■ Materiality, as defined above, has an extraordinarily wide range of meanings. Relevance is not a question; rather, the statute provides that testimony is material if "it could have affected the course or outcome of the official proceeding." Theoretically, if perjured testimony might deter a grand jury from following one line of inquiry, or if it might encourage the grand jury to follow a rabbit trail, then it could affect the course or outcome of the grand jury's investigation. Although the concept of materiality refers to statements having some substantial potential for obstructing justice and excludes utterly trivial falsifications, *Mitchell v. State,* 608 S.W.2d 226, 228 (Tex.Crim.App. [Panel Op.] 1980), perjury may nevertheless be assigned on false testimony "as to facts which are collaterally, remotely, or circumstantially material." *Logan v. State,* 96 Tex.Crim. 601, 258 S.W. 830, 831–32 (1924); *Terrell v. State,* 801 S.W.2d 544, 547 (Tex.App.—Houston [14th Dist.] 1990, pet. ref'd).

Using this description of materiality as the basis for analysis, we cannot say that the trial court erred as a matter of law by deny-

ing Ward's motion asking the court to find that the evidence was not material. Further, we note that the jury necessarily concluded that the testimony was material, because the definition was also provided as part of the jury instructions, as appears to be appropriate under *Gaudin.* This point of error is overruled.

## IV.

### Failure to Inform that He was a Suspect

Ward next contends that the trial court erred by admitting into evidence his grand jury testimony of May 21, 1993, because it was produced in violation of TEX.CODE CRIM. PROC. ANN. art. 20.17 (Vernon Supp.1997). This section generally provides that when a grand jury propounds questions to a person accused or suspected of a crime it must inform the person of the offense of which he is a suspect and furnish him with a written copy of warnings delineated by Article 20.17(c).[3] Ward and the State agree that no such warnings were given.

■ The initial question is whether Ward was indeed accused or suspected of the crime at the time that the questions were propounded. It was made clear at the beginning of his questioning that the grand jury was interested in Chris Denton and was investigating Denton's whereabouts at the time of Wilson's disappearance. It further became clear as the questioning progressed that the grand juror who was conducting the questioning believed that Ward had some information about her disappearance. In response to Ward's query as to why he was subpoenaed, however, the juror stated that:

---

3. TEX.CODE CRIM. PROC. ANN. art. 20.17(c) (Vernon Supp.1997), provides as follows:

(c) If an accused or suspected person is subpoenaed to appear before a grand jury prior to any questions before the grand jury, the person accused or suspected shall be orally warned as follows:

(1) "Your testimony before this grand jury is under oath";

(2) "Any material question that is answered falsely before this grand jury subjects you to being prosecuted for aggravated perjury";

(3) "You have the right to refuse to make answers to any question, the answer to which would incriminate you in any manner";

(4) "You have the right to have a lawyer present outside this chamber to advise you before making answers to questions you feel might incriminate you";

(5) "Any testimony you give may be used against you at any subsequent proceeding";

(6) "If you are unable to employ a lawyer, you have the right to have a lawyer appointed to advise you before making an answer to a question, the answer to which you feel might incriminate you."

We've interviewed lots of people, I'm going to tell you straight, all of em point fingers at Brent Ward. That's exactly why you was subpoenad (sic) to come back here. Not just one, not two, but a hell of [a] lot more than there is in this room, pointin fingers at Brent Ward, that's the reason you are here. It wasn't me, it wasn't the DA, it was us as a whole but everybody is lookin at Brent Ward to be involved.

[District Attorney Tim Cone:] Everybody thinks you know somethin Brent.

The State refers to the district attorney's comment to support its position that the grand juror really meant that they believed that Ward knew something about the disappearance, not that he was criminally complicit in her disappearance. The grand juror's comments, standing alone, allow no such conclusion. However, in context, the grand juror's comments were part of a pattern of bullying and cajoling in which the juror attempted (albeit with a heavy hand) to elicit from the witness any knowledge about Wilson's disappearance. It appears likely that the initial statement that the investigation was focusing upon Chris Denton was not a smoke screen, and that Ward was actually not accused or suspected of committing the underlying crime. Thus, Ward was a witness rather than an accused, and the requirements of Article 20.17 do not apply. This point of error is overruled.

## V.

### Violation of Right Against Self-incrimination

Ward next contends that the court erred by admitting this testimony into evidence because it was obtained in violation of his right against self-incrimination under the Fifth and Sixth Amendments of the United States Constitution. This contention is disposed of by the previous discussion, as the evidence shows that Ward was neither arrested, accused, nor suspected of the crime being investigated. If he were being tried for committing the acts about which he testified, a different situation might exist. In this case, however, he was not being prosecuted for the acts, but for lying about them. This point is overruled.

The judgment of the trial court is affirmed.