COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                      NOS.  2-08-442-CR

        2-08-443-CR

        2-08-444-CR

 

 

WENDELL MARQUISE
WASHINGTON                                      APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM
THE 372ND DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

I. 
Introduction








Appellant
Wendell Marquise Washington appeals his convictions and sentences for assault
causing bodily injury to a public servant, evading arrest or detention, and
delivery of a controlled substance.  He
contends in five points that the evidence is factually insufficient to sustain
his convictions, that his conviction and sentence for evading arrest or
detention violates his rights against double jeopardy, and that the trial court
erred by sentencing him as a first-degree felon for the state jail felony of evading
arrest.  We affirm.

II. 
Background

A grand
jury indicted Appellant for two counts of assault causing bodily injury to a
public servant, two counts of evading arrest using an automobile, and one count
of delivery of a controlled substance. 
The State waived one count of the evading arrest charge, and Appellant
pleaded not guilty to all remaining charges. 

Officer
Ronald Jeter, an undercover officer with the narcotics division of the Fort
Worth Police Department, testified that he routinely participates in narcotics
buy-bust operations.  Officer Jeter
testified that a buy-bust operation targets a location where drugs are sold in
open areas, that an undercover officer will attempt to purchase narcotics, and
that the undercover officer will leave the area and signal other officers to
move in and arrest the individual who sold the narcotics.  








During a
buy-bust operation on April 23, 2008, Officer Jeter drove an undercover vehicle
to a convenience store on East Rosedale Street in Fort Worth.  When he arrived, he saw a white Cadillac with
a person in the driver=s seat and another person
standing at the passenger window.  As he
passed the white Cadillac, the black male at the passenger window said, AHey,
man, what do you want?@ 
Officer Jeter testified that he told the man, AI=m
looking for a 20.@ 
Officer Jeter testified that Appellant then said, AI got
you,@ stepped
out of the driver=s side of the white Cadillac,
and walked to the passenger side of Officer Jeter=s
undercover vehicle.  Officer Jeter gave
Appellant a twenty dollar bill, and Appellant gave Officer Jeter a blue baggie
containing what appeared to be crack cocaine.[1]  

Appellant
then returned to the white Cadillac and sat in the driver=s seat.
A woman that had been across the street got into the white Cadillac on the
passenger=s side.  Officer Jeter drove away slowly and gave the
arrest signal. Some of the arrest team arrived on foot, and Sergeant Steven
Enright and Corporal Charles Combs parked an unmarked, blue vehicle behind the
white Cadillac to block its exit.  As he
watched the arrest team converge on the white Cadillac, Officer Jeter observed
the white Cadillac back into the blue vehicle, turn around, and speed away. 








On
cross-examination, Officer Jeter testified that although the blue vehicle that
Sergeant Enright and Corporal Combs used to block the white Cadillac was an
unmarked car without lights on top, Sergeant Enright and Corporal Combs wore
black boots, blue jeans, and Aa raid
vest with State=s Gang Unit on one side, Police
on the other, large police letters on the back.@ Officer
Jeter prepared his report within hours of the incident and used the name AKevin
Jackson@ in the
report based on information received from other officers,[2]
but he identified Appellant as the person that sold him the crack cocaine from
a photograph the next day. 

Officer
Jeter testified that he later learned that the white Cadillac had wrecked in a
ditch.  After arriving at the scene of
the wreck, Officer Jeter went into a nearby convenience store, spoke with the
convenience store clerk, and retrieved the twenty dollar bill he had given
Appellant to purchase the crack cocaine.[3]  Officer Jeter also testified, however, that
video footage from the convenience store showed a black female, not a black
male, giving the twenty dollar bill to the clerk. 








Corporal
Combs testified that he wore a metal badge, a weapon, and his Araid
gear@ on
April 23, 2008; his raid gear has APOLICE@
prominently displayed on one shoulder and Agang
unit@ on the
other shoulder.  He and Sergeant Enright,
who was dressed in the same manner, were parked around the corner from the
convenience store when Officer Jeter signaled that he had purchased the crack
cocaine from Appellant; Corporal Combs was driving, and Sergeant Enright was in
the passenger seat.  With the red and
blue lights flashing, Corporal Combs pulled the unmarked, blue police car into
the convenience store parking lot and parked approximately fifteen to twenty
feet behind Appellant=s white Cadillac.  Officer Allen approached the white Cadillac
on foot, with his weapon drawn, yelling AFort
Worth Police.@ 


Sergeant
Enright exited the vehicle and stood outside the police car, behind the
door.  Corporal Combs testified that he
was exiting the vehicle, with one foot outside the door, when Appellant drove
the white Cadillac backward Aat a
high rate of speed.@ 
He stated, A[Appellant] hit the front of our
car, and it threw me up over the front steering wheel because I was kind of
stepping to get out of the car, so I did not even see the car coming at us.@  He said the collision was hard enough to
throw him over the steering wheel, wedge his head between the windshield and
dash, and slam him back into the seat; he testified, AI was dazed[,]
and it knocked the wind out of me.@  Corporal Combs testified that he felt pain in
his chest, that he could not breathe, and that he hit his head hard enough that
he Acouldn=t
realize exactly just what had happened.@
Corporal Combs did, however, watch the white Cadillac drive away and testified
that Ait was
probably on its way to well over a hundred miles an hour.@ 








On
cross-examination, Corporal Combs agreed that someone in front of the unmarked,
blue vehicle could not see what was written on the back of his raid gear and
probably could not see the writing on the front of his raid gear because the
dashboard was still in front of him. 
Corporal Combs testified, however, that Sergeant Enright had completely
exited the vehicle and was standing up at the time of the collision.  Corporal Combs testified that he and Sergeant
Enright arrived before Officer Allen approached the white Cadillac from the
front, that he could see Officer Allen, the wording on his vest, and his
firearm, and that he could hear Officer Allen yelling at Appellant.  He also testified that Appellant turned as he
was backing up and looked directly at him and Sergeant Enright. 








Sergeant
Enright testified that once Corporal Combs pulled the unmarked, blue police car
into the parking lot, he started exiting the vehicle, saw Officer Larry Carnes
approaching the white Cadillac on foot with his weapon drawn, and heard Officer
Carnes yelling, AFort Worth Police.  Show me your hands.@[4]
Sergeant Enright testified that as he exited the car, he saw the Cadillac=s
reverse lights come on and the driver look backward over his right shoulder and
accelerate the Cadillac toward the blue police car.  Sergeant Enright testified that he was still
standing behind the door of the police car and that the impact between the
Cadillac and the police car caused the door to hit him and throw him backward
three or four feet.[5]  After being knocked backward, Sergeant
Enright ran forward toward the Cadillac, saw that the passenger window was
open, drew his weapon toward Appellant, and told Appellant to stop.  Sergeant Enright testified that he was six to
seven feet from Appellant when he told him to stop, that Appellant ducked down
and raised his arm in a defensive position as if he were about to be shot, that
Appellant did not stop, and that Appellant instead accelerated the Cadillac and
drove away at a high rate of speed.  He
testified that the white Cadillac=s tires
were squealing, that the car was kicking up dirt, and that the speed was
dangerously excessive. 

Officer
Mark Reese testified that following Appellant=s arrest
on April 24, 2008, he transported Appellant to jail.  Officer Reese testified that during the
transport, Appellant initiated conversation with him and said, AI was
nervous.  I don=t know
why I ran.  Probably because I was going
to catch a delivery charge.@  








At the
conclusion of the guilt-innocence phase, the jury found Appellant guilty of
both counts of assault causing bodily injury to a public servant, the sole
count of evading arrest using an automobile with an affirmative deadly weapon
finding, and the sole count of delivery of a controlled substance. Appellant
elected to have the trial court determine his punishment, and the trial court
sentenced Appellant to thirty years=
confinement for each count of assault, forty years=
confinement for evading arrest or detention,[6]
and ten years= confinement for delivery of a
controlled substance, with all sentences to run concurrently.  Appellant timely filed notice of these
appeals.

III. 
Sufficiency of the Evidence

In his
third, fourth, and fifth points, Appellant contends that the evidence is
factually insufficient to sustain his convictions.  Although Appellant does not differentiate
between legal and factual sufficiency within his arguments, Appellant cites
cases addressing only the factual sufficiency of evidence.  See Clewis v. State, 922 S.W.2d 126
(Tex. Crim. App. 1996); Ward v. State, 48 S.W.3d 383 (Tex. App.CWaco
2001, no pet.).  Thus, we address only
the factual sufficiency of the evidence. 
See Tex. R. App. P. 38.1, 47.1.








A.  Standard of Review

When
reviewing the factual sufficiency of the evidence to support a conviction, we
view all the evidence in a neutral light, favoring neither party.  Steadman v. State, 280 S.W.3d 242, 246
(Tex. Crim. App. 2009); Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim.
App. 2006).  We then ask whether the
evidence supporting the conviction, although legally sufficient, is
nevertheless so weak that the factfinder=s
determination is clearly wrong and manifestly unjust or whether conflicting
evidence so greatly outweighs the evidence supporting the conviction that the
factfinder=s determination is manifestly
unjust.  Steadman, 280 S.W.3d at
246; Watson, 204 S.W.3d at 414B15,
417.  To reverse under the second ground,
we must determine, with some objective basis in the record, that the great
weight and preponderance of all the evidence, although legally sufficient,
contradicts the verdict.  Watson,
204 S.W.3d at 417.  








Unless
we conclude that it is necessary to correct manifest injustice, we must give
due deference to the factfinder=s
determinations, Aparticularly those
determinations concerning the weight and credibility of the evidence.@  Johnson v. State, 23 S.W.3d 1, 9 (Tex.
Crim. App. 2000); see Steadman, 280 S.W.3d at 246.  Evidence is always factually sufficient when
it preponderates in favor of the conviction. 
Steadman, 280 S.W.3d at 247; see Watson, 204 S.W.3d at
417.  

B.  Assault

Appellant
argues in his third point that the evidence is factually insufficient to
support his convictions for assault causing bodily injury to a public
servant.  Specifically, he contends that
the white Cadillac was backing up Ato avoid
a civilian vehicle which had blocked its path and in the words of one of the
officers was >unintentional.=@ 

1.  Applicable Law

A person
commits the offense of assault on a public servant if he intentionally,
knowingly, or recklessly causes bodily injury to a person the actor knows is a
public servant while the public servant is lawfully discharging an official
duty.  See Tex. Penal Code Ann. '
22.01(a)(1), (b)(1) (Vernon Supp. 2009). 
Here, the jury found Appellant guilty of recklessly causing bodily
injury to Corporal Combs and Sergeant Enright. 


2.  The Evidence is Factually Sufficient








Given
Appellant=s contention that he Aunintentionally@ backed
into the police vehicle, we note that the record is unclear as to whether
Officer Jeter testified that Appellant unintentionally backed into the police
vehicle or that the civilian vehicle unintentionally blocked Appellant=s white
Cadillac.  During the State=s direct
examination of Officer Jeter, and referring to a blue car drawn onto an aerial
photograph of the convenience store parking lot, the following exchange
occurred:

Q.  And there is an additional
car that is drawn in on that photo, and do you know what that car represents?

 

A.  That was a citizen that was
attempting to pull out of the parking lot. 
And when he attempted to leave at first, they unintentionally blocked
him; therefore, he backed up into the police car. 

 

And during cross-examination by
Appellant=s counsel, Officer Jeter
testified:

Q.  Now, earlier when you were
being asked questions about the blue vehicle on State=s Exhibit 29 that backed
out, you indicated the other vehicle that was still there basically
unintentionally moved back to avoid striking the vehicle that was pulling out;
is that right?

 

A.  Sir?  I=m sorry.

 

Q.  Well, on State=s Exhibit 29 there=s a blue vehicle that=s parked face-in to one
of the stores?

 

A.  Yes, sir.

 

Q.  . . . You indicated that
when the blue vehicle in [State=s Exhibit] 29 pulled back that this vehicle moved
back so as to avoid a contact of the vehicle pulling out unintentionally; is
that right?

 

A.  Was that my wording?

 

Q.  That=s what I=m asking you.

 

A.  The white Cadillac.

 

Q.  Pulled back?








A.  Backed up, yes, sir.

 

Q.  Just unintentionally to
avoid the collision, right?

 

A.  I have no idea if it was
unintentional or not.

 

Q.  I=m just asking you, did
you ever use that word Aunintentional@?

 

A.  I might have, yes, sir. 

 

A neutral reading of Officer
Jeter=s
testimony could possibly suggest either that the blue civilian vehicle
unintentionally blocked Appellant=s white
Cadillac by backing up or that Appellant unintentionally backed the white
Cadillac into the police car parked behind him. 
Further, the jury heard other testimony that Appellant may not have
known Corporal Combs and Sergeant Enright were police officers before he backed
the white Cadillac into their unmarked police car.  For example, Corporal Combs agreed that
someone in the white Cadillac probably could not see what was written on the
back of his raid gear and probably could not see the writing on the front of his
raid gear because of the dashboard. 








However,
the jury heard other testimony that supports Appellant=s
convictions.  The jury heard testimony
that Corporal Combs and Sergeant Enright were wearing their Araid
gear,@ that
they parked fifteen to twenty feet behind Appellant=s white
Cadillac with the unmarked car=s red
and blue lights flashing, that both officers had exited or partially exited the
car before the collision, that Officers Allen and Carnes were approaching
Appellant=s vehicle from the front
yelling, AFort Worth Police@ and AShow me
your hands,@ that Corporal Combs and
Sergeant Enright parked before Officer Allen approached the white Cadillac from
the front, and that Appellant looked over his right shoulder at Corporal Combs
and Sergeant Enright as he was backing up. Corporal Combs testified that the
white Cadillac Abacked up at a high rate of
speed and hit the front of our car.@ 

Viewing
the evidence in a neutral light, we conclude the jury could have found beyond a
reasonable doubt that Appellant recklessly caused bodily injury to Sergeant
Enright and Corporal Combs, persons Appellant knew to be public servants
lawfully discharging an official duty.  See
Tex. Penal Code Ann. ' 22.01(a)(1), (b)(1).  Therefore, we cannot say that the evidence is
so weak that the jury=s determination is clearly wrong
or manifestly unjust or that the conflicting evidence so greatly outweighs the
evidence supporting the convictions that the jury=s
determination is manifestly unjust.  See
Lancon v. State, 253 S.W.3d 699, 704 (Tex. Crim. App. 2008); Watson,
204 S.W.3d at 414B15, 417.  Accordingly, we hold that the evidence is
factually sufficient to support the jury=s
verdict, and we overrule Appellant=s third
point.

 

 








C.  Evading Arrest

Appellant
contends in his fourth point that the evidence is factually insufficient to
support his conviction for evading arrest or detention. Specifically, Appellant
argues that, at the time of his arrest, he Adisplayed
injuries and informed the police that these had been recently given to him when
he had been kidnapped, shot at and pistol whipped [sic] by several other
persons because he had been unable to pay them what he owed them.@  He further contends that A[n]o
effort to discredit that story was ever made.@ 

1.  Applicable Law

A person
commits the state jail felony offense of evading arrest if he intentionally
flees, in a vehicle, from a person that he knows is a peace officer lawfully
attempting to arrest or detain him. See Tex. Penal Code Ann. ' 38.04(a),
(b)(1) (Vernon Supp. 2009); Guillory v. State, 99 S.W.3d 735, 741 (Tex.
App.CHouston
[1st Dist.] 2003, pet. ref=d).  

2.  The Evidence is Factually Sufficient








Officer
Smith testified that he obtained information from Appellant=s wife
suggesting that Appellant had been kidnapped and pistol-whipped, but he also
testified that Appellant was not able to provide any information about the
make, model, size, or color of the vehicle he was allegedly thrown into and
that Appellant did not provide any description of the alleged kidnapper.  The jury could have found the information
about the alleged kidnapping to not be credible.

The jury
also heard testimony that Sergeant Enright exited the unmarked, blue police car
wearing raid gear as the arrest team converged on Appellant=s white
Cadillac; that Appellant backed the white Cadillac into the unmarked vehicle,
turned around, and sped away; that Sergeant Enright ran toward the white
Cadillac, saw that the passenger window was open, drew his weapon toward
Appellant, and told Appellant to stop; and that Appellant did not stop and
instead drove away at a dangerously excessive speed.  Moreover, Officer Reese testified that
Appellant told him, AI was nervous.  I don=t know
why I ran.  Probably because I was going
to catch a delivery charge.@  








Viewing
all the evidence in a neutral light, we conclude the jury could have found
beyond a reasonable doubt that Appellant, using a vehicle, intentionally fled
from Sergeant Enright, a person Appellant knew to be a peace officer lawfully
attempting to arrest or detain him.  See Tex. Penal Code Ann. '
38.04(a), (b)(1); Guillory, 99 S.W.3d at 741.  Therefore, we cannot say that the evidence is
so weak that the jury=s determination is clearly wrong
or manifestly unjust or that the conflicting evidence so greatly outweighs the
evidence supporting the conviction that the jury=s
determination is manifestly unjust.  See
Lancon, 253 S.W.3d at 704; Watson, 204 S.W.3d at 414B15,
417.  Accordingly, we hold that the evidence
is factually sufficient to support the jury=s
verdict, and we overrule Appellant=s fourth
point.

D.  Delivery of a Controlled Substance

Appellant
argues in his fifth point that the evidence is factually insufficient to
support his conviction for delivery of a controlled substance because A[t]he
record reveals that when [Officer] Jeter dealt drugs[,] he did so with the
driver of the vehicle.  The driver of the
vehicle then went into the store and was never seen again.@ 

1.  Applicable Law

A person
commits the state jail felony of delivery of a controlled substance if the
person knowingly possesses with intent to deliver a controlled substance in the
amount of less than one gram.  See
Tex. Health & Safety Code Ann. '
481.112(a), (b) (Vernon 2010).  Cocaine
is a controlled substance.  See id.
' 481.102(3)(D)
(Vernon 2010).

2.  The Evidence is Factually Sufficient








Officer
Jeter testified that as he arrived at the convenience store, he saw a white
Cadillac with a person in the driver=s seat
and a person standing at the passenger window, conversing with the person
inside the Cadillac.  The black male at
the passenger window said, AHey,
man, what do you want?@ 
Officer Jeter told the man, AI=m
looking for a 20,@ and Appellant said, AI got
you@ and
stepped out of the driver=s side of the Cadillac, walked
to the passenger side of Officer Jeter=s
vehicle, and gave Officer Jeter a blue baggie containing crack cocaine after
Officer Jeter gave him a twenty dollar bill. 
Appellant then returned to the white Cadillac and got in on the driver=s
side.  Officer Jeter made an in-court
identification of Appellant as the person who sold him the cocaine.  The jury also heard testimony that Appellant
told Officer Reese, AI don=t know
why I ran.  Probably because I was going
to catch a delivery charge.@  The record does not support Appellant=s
contention that the driver of the white Cadillac Awent
into the store and was never seen again.@ 

Viewing
all the evidence in a neutral light, we conclude the jury could have found
beyond a reasonable doubt that Appellant intentionally or knowingly delivered
less than one gram of cocaine to Officer Jeter. 
See Tex. Health & Safety Code Ann. ''
481.102(3)(D), .112(a), (b).  Therefore,
we cannot say that the evidence is so weak that the jury=s
determination is clearly wrong or manifestly unjust or that the conflicting
evidence so greatly outweighs the evidence supporting the conviction that the
jury=s
determination is manifestly unjust.  See
Lancon, 253 S.W.3d at 704; Watson, 204 S.W.3d at 414B15,
417.  Accordingly, we hold that the
evidence is factually sufficient to support the jury=s
verdict, and we overrule Appellant=s fifth
point.

 








IV. 
Collateral Estoppel and Double Jeopardy

Appellant
contends in his first point that collateral estoppel and double jeopardy bar
his conviction for evading arrest.  He
argues that the trial court erred by adjudicating him guilty of evading arrest
because the evading arrest offense occurred simultaneously with, and was
subsumed within, the assault convictions.[7]


A.  Applicable Law

The
Double Jeopardy Clause of the United States Constitution provides that no
person shall be subjected to twice having life or limb in jeopardy for the same
offense.  U.S. Const. amend. V.  Generally, this clause protects against (1) a
second prosecution for the same offense after acquittal, (2) a second prosecution
for the same offense after conviction, and (3) multiple punishments for the
same offense.  Brown v. Ohio, 432
U.S. 161, 165, 97 S. Ct. 2221, 2225 (1977); Ex parte Cavazos, 203 S.W.3d
333, 336 (Tex. Crim. App. 2006).








To
determine whether both offenses are the same, we must examine the elements of
the applicable statutes to determine whether each statute Arequires
proof of an additional fact which the other does not.@  Blockburger v. United States, 284 U.S.
299, 304, 52 S. Ct. 180, 182 (1932); see United States v. Dixon, 509
U.S. 688, 696, 113 S. Ct. 2849, 2856 (1993); Parrish v. State, 869
S.W.2d 352, 353B55 (Tex. Crim. App. 1994).  When resolving whether two offenses are the
same for double jeopardy purposes, we focus on the elements alleged in the
charging instrument.  Bigon v. State,
252 S.W.3d 360, 370 (Tex. Crim. App. 2008). 
Separate convictions for different offenses arising from a single
criminal transaction do not violate the prohibition against double
jeopardy.  See Haight v. State,
137 S.W.3d 48, 50B51 (Tex. Crim. App. 2004); see
also Hobbs v. State, 175 S.W.3d 777, 779 (Tex. Crim. App. 2005) (discussing
continuous offense of evading arrest).

B.  Analysis

1.  Collateral Estoppel








Citing Ashe
v. Swensen, Appellant argues that the doctrine of collateral estoppel bars
his conviction for evading arrest.  See
397 U.S. 436, 443B45, 90 S. Ct. 1189, 1194B95
(1970).  However, Athe Ashe
doctrine of collateral estoppel only applies where there are two trials, and
not where a single trial involving two counts is involved.@  Ward v. State, 938 S.W.2d 525, 528
(Tex. App.CTexarkana 1997, pet. ref=d)
(citing Hite v. State, 650 S.W.2d 778, 784 n.7 (Tex. Crim. App.
1983)).  Appellant was tried for multiple
offenses in a single trial.  Thus,
collateral estoppel does not apply.  See
Hite, 938 S.W.2d at 784 n.7; Ward, 938 S.W.2d at 528.

2.  Double Jeopardy

Appellant
also argues that double jeopardy bars his conviction because Athe
evading arrest was completely subsumed and was part and parcel of the
assault[s].@ 
The State counters that double jeopardy does not bar the convictions
because the assault offenses and the evading arrest offense are different
offenses and require proof of several different elements. 













We focus
on the elements alleged in the charging instrument to determine whether two
offenses are the same for double jeopardy purposes.  Bigon, 252 S.W.3d at 370.  Under the charging instruments, the
assault-on-a-public-servant convictions required proof that Appellant
intentionally or knowingly caused bodily injury to Corporal Combs and Sergeant
Enright by using an automobile, that Corporal Combs and Sergeant Enright were
public servants lawfully discharging an official duty, and that Appellant knew
Corporal Combs and Sergeant Enright were public servants.  The evading arrest conviction required proof
that Appellant used a vehicle to intentionally flee from Sergeant Enright and
that Appellant knew that Sergeant Enright was a peace officer attempting to
lawfully arrest or detain him.  The
assault convictions required proof of bodily injury to Corporal Combs and
Sergeant Enright, but the evading arrest conviction did not.  The evading arrest conviction required proof
that Appellant intentionally fled, but the assault convictions did not.  Thus, each offense required proof of at least
one fact that the other offense did not. 
See Ortega v. State, 171 S.W.3d 895, 899B900
(Tex. Crim. App. 2005) (holding offenses of assault on a public servant and
resisting arrest were not the same for double jeopardy purposes because they
each required proof of at least one fact that the other did not).[8]  We hold that the offenses of assault on a
public servant and the offense of evading arrest were not the same in this
case.  See id.; see also
Mallett v. State, 65 S.W.3d 59, 68 (Tex. Crim. App. 2001) (holding that
convictions for aggravated assault against a public servant and criminal
mischief did not violate double jeopardy because each offense required proof of
an element that the other did not).  We
overrule Appellant=s first point.

V. 
Sentencing

Appellant
argues in his second point that the trial court erred by improperly sentencing
him as a first degree felon for the state jail felony of evading arrest.  He also contends that he could not be
sentenced as a first-degree felon because the indictment gave notice of
enhancement to only a second degree felony, not a first degree felony. 








As
applied in this case, evading arrest or detention is a state jail felony
because Appellant used a vehicle to flee and had not been previously convicted
of evading arrest.  See Tex. Penal
Code Ann. ' 38.04(b)(1)(B).  Appellant cites three cases and argues that
he was improperly sentenced as a first-degree felon because state jail felonies
cannot be enhanced to habitual felonies. 
However, two of the cited cases did not involve an aggravating element
such as the deadly weapon finding in this case, and the third case was later
overruled by the issuing court.  See
Ester v. State, 941 S.W.2d 297, 300 (Tex. App.CTyler
1996, pet. ref=d) (op. withdrawn on denial of
reh=g)
(holding the appellant=s sentence could not be enhanced
because there was no deadly weapon finding, and the habitual offender
enhancement did not apply); State v. Warner, 915 S.W.2d 873, 879 (Tex.
App.CHouston
[1st Dist.] 1995, pet. ref=d)
(holding Athat the legislature did not
intend for state jail felonies to be enhanced to habitual offender status
pursuant to section 12.42(d)@), overruled
by Smith v. State, 960 S.W.2d 372, 375 (Tex. App.CHouston
[1st Dist.] 1998, pet. ref=d); State
v. Mancuso, 903 S.W.2d 386, 387B88 and
387 n.3 (Tex. App.CHouston [1st Dist.] 1995)
(holding state jail felony could not be enhanced for habitual offender and
noting absence of evidence of deadly weapon or applicable prior convictions), aff=d, 919
S.W.2d 86 (Tex. Crim. App. 1996).  Thus,
these cases do not support Appellant=s
contention.

Appellant
was convicted of the state jail felony offense of evading arrest, the jury made
an affirmative deadly weapon finding, and the trial court found the habitual
offender allegation true.  Appellant
argues that his sentence is illegal because A[e]nhancement
of [s]tate [j]ail felonies is solely had under Tex. Penal Code [sections]
12.35(c) and 12.42(a) and not under [section] 12.42(d).@ To
address Appellant=s argument, it is necessary to
consider the text of penal code sections 12.35(a), 12.35(c)(1), 12.42(a), and
12.42(d).








Penal
code section 12.35(a) states: A(a) Except
as provided by Subsection (c), an individual adjudged guilty of a state
jail felony shall be punished by confinement in a state jail for any term of
not more than two years or less than 180 days.@  Tex. Penal Code Ann. '
12.35(a) (Vernon Supp. 2009) (emphasis added). Penal code section 12.35(c)(1)
states:

(c)  An individual adjudged
guilty of a state jail felony shall be punished for a third degree felony if
it is shown on the trial of the offense that:

 

(1) a deadly weapon as defined by Section 1.07 was used or
exhibited during the commission of the offense or during immediate flight
following the commission of the offense, and that the individual used or
exhibited the deadly weapon or was a party to the offense and knew that a
deadly weapon would be used or exhibited. 

 

Id. '
12.35(c)(1) (emphasis added).  Appellant
could not be punished under 12.35(a) because the deadly weapon finding made
section 12.35(c)(1) the applicable punishment provision.  See id. '
12.35(a), (c)(1).  Thus, the trial court
properly enhanced the applicable punishment range of Appellant=s state
jail felony to that of a third degree felony under section 12.35(c)(1).  See id. '
12.35(c)(1). 

The next
issue is whether the trial court should have sentenced Appellant under section
12.42(a) or section 12.42(d).  Penal code
section 12.42(a) states:

(1) If it is shown on the trial of a state jail felony punishable
under Section 12.35(a) that the defendant has previously been finally
convicted of two state jail felonies, on conviction the defendant shall be
punished for a third‑degree felony.

 








(2) If it is shown on the trial of a state jail felony punishable
under Section 12.35(a) that the defendant has previously been finally
convicted of two felonies, and the second previous felony conviction is for an
offense that occurred subsequent to the first previous conviction having become
final, on conviction the defendant shall be punished for a second‑degree
felony. 

 

(3) Except as provided by Subsection (c)(2),[9]
if it is shown on the trial of a state jail felony punishable under Section
12.35(c) or on the trial of a third‑degree felony that the defendant
has been once before convicted of a felony, on conviction he shall be
punished for a second‑degree felony. 

 

Id. '
12.42(a) (Vernon Supp. 2009) (emphasis added). 
Subsections 12.42(a)(1) and (a)(2) do not apply because they expressly
apply to persons convicted under section 12.35(a), and Appellant could not be
sentenced under section 12.35(a) because of the deadly weapon finding.  See id. ''
12.35(a), (c)(1), 12.42(a)(1), (2).  In
addition, section 12.42(a)(3) does not apply because Appellant had been
previously convicted of more than one felony. 
See id. ' 12.42(a)(3).  Thus, contrary to Appellant=s
contention, he could not be sentenced under section 12.42(a).   

Next, we
must determine whether the trial court properly sentenced Appellant under penal
code section 12.42(d), which provides:








Except as provided by Subsection
(c)(2),[10]
if it is shown on the trial of a felony offense other than a state jail
felony punishable under Section 12.35(a) that the defendant has previously
been finally convicted of two felony offenses, and the second previous felony
conviction is for an offense that occurred subsequent to the first previous conviction
having become final, on conviction he shall be punished by imprisonment in the
Texas Department of Criminal Justice for life, or for any term of not more than
99 years or less than 25 years.

Id. '
12.42(d) (Vernon Supp. 2009) (emphasis added). 
The trial court found that Appellant had been convicted of two felony
offenses meeting the requirements of section 12.42(d), and as stated, Appellant
could not be punished under section 12.35(a) because of the deadly weapon
finding.  See id. ' 12.35(a),
(c)(1).  Moreover, section 12.42(d) does
not exclude any state jail felonies other than those punishable under
12.35(a).  See id. '
12.42(d).  Thus, the trial court properly
enhanced Appellant=s punishment range to that of a
first degree felony by applying section 12.42(d).  See id. '
12.42(d).  








The
court in Bunton v. State addressed a similar scenario.  See 136 S.W.3d 355, 361B62 (Tex.
App.CAustin
2004, pet. ref=d).  There, a grand jury indicted Bunton for the
state jail felony of evading arrest while using a motor vehicle.  Id. at 361.  The indictment also alleged the use of a
motor vehicle as a deadly weapon and an habitual criminal notice for two prior
felony convictions.  Id. at
362.  Bunton argued that the trial court
erred by authorizing the jury to assess his punishment under section 12.42(d)
of the penal code.  Id. at 360B61.  The court disagreed, stating,

the legislature could have exempted all state jail felonies from the
habitual criminal status in section 12.42(d). 
The legislature, however, expressly exempted only those state jail
felonies punishable under section 12.35(a), often described by case law as non‑aggravated
offenses.  By doing so, the legislature
made aggravated state jail felonies punishable under the provisions of section
12.35(c) subject to the habitual criminal provisions of section 12.42(d).

 

Id. at 363;
see also Smith, 960 S.W.2d at 374 (holding that Aan
aggravated state jail felony may be enhanced by two prior convictions in the
proper sequence to habitual offender status@ under
penal code section 12.42(d)).  Thus, the Bunton
court held that there was Ano merit
in [Bunton=s] claim that fundamental error
occurred in the jury charge at the punishment phase of the trial when the trial
court instructed the jury on the range of punishment under section 12.42(d).@  Bunton, 136 S.W.3d at 363.  We hold that the trial court did not err by
sentencing Appellant under penal code section 12.42(d) in this case.








To the
extent Appellant contends that the habitual offender notice in the indictment
did not give him sufficient notice that the State sought to enhance his
punishment to that of a first degree felony because the indictment stated, AState
Jail Felony Enhancement B 2nd Degree Felony Notice,@ we note
that the remainder of the habitual offender paragraph alleged two prior felony
offenses and that the indictment also included a deadly weapon allegation.  The habitual offender and deadly weapon
allegations, if proven, removed the possibility that Appellant could be
punished as a second-degree felon.  See
Tex. Penal Code Ann. ' 12.42(a)(2), (3).  In Ex parte Beck, the court of
criminal appeals stated, 

The penal laws are fraught with
offenses that have a higher penalty range when an additional fact, which is not
necessary to prove the offense, is pled in the charging instrument.  Although the additional fact must be pled in
the indictment . . . the effect of that fact on punishment need not be pled.

769 S.W.2d 525, 527 n.2 (Tex.
Crim. App. 1989).  Because the face of
the indictment alleged two prior felony offenses and the use of a deadly
weapon, and because Appellant was not eligible for punishment under sections
12.35(a) or 12.42(a)(2) and (3) if the habitual offender and deadly weapon
allegations were proven true, we hold that Appellant had sufficient notice that
the State sought enhancement of his punishment to that of a first degree
felony.  See Bunton, 136 S.W.3d at
364 (noting precedent that alleging two prior felony convictions on face of
indictment provides sufficient notice in non-state jail felony cases).  We overrule the remainder of Appellant=s second
point.  

 

 








VI. 
Conclusion

Having
overruled each of Appellant=s five
points, we affirm the trial court=s
judgments.

 

ANNE GARDNER

JUSTICE

 

PANEL:  LIVINGSTON, C.J.;
GARDNER and MEIER, JJ.

 

PUBLISH

 

DELIVERED: August 31, 2010











[1]The substance in the blue
baggie was later confirmed to be 0.14 grams of cocaine. 





[2]Corporal Combs testified
that the registered owner of the white Cadillac was Kevin Jackson. 





[3]Officer Jeter confirmed
the serial number on the twenty dollar bill by comparing it to a photocopy of
the original bill. 





[4]Officer Carnes testified
that as he approached the white Cadillac, a citizen=s vehicle backed out of a
parking space and was between him and the white Cadillac in a way that blocked
the forward movement of the Cadillac. 





[5]Sergeant Enright said he did
not initially feel any pain but later felt pain and stiffness in his chest,
neck, and shoulder from the impact. 





[6]The trial court enhanced
the punishment range for the evading arrest conviction first with the deadly
weapon finding and second with the habitual offender finding. 





[7]To the extent Appellant
argues that he was punished multiple times for the same conduct, we overrule
his argument as inadequately briefed.  See
Tex. R. App. P. 38.1(i).  We also note
that evading arrest is not a lesser-included offense of assault on a public
servant and that both the assault and evading arrest statutes specifically
authorize multiple prosecutions if the conduct violates that and another
provision of the penal code.  See
Warren v. State, 98 S.W.3d 739, 743B44 (Tex. App.CWaco 2003, pet. ref=d); see also Tex.
Penal Code Ann. '' 22.01(g), 38.04(d).





[8]In Ortega, the
court of criminal appeals stated:

 

The
offense of assault required proof of at least one fact that the offense of
resisting arrest did not: that the appellant caused bodily injury. The offense
of resisting arrest required proof of a fact that the offense of assault did
not: that the appellant prevented or obstructed a peace officer from effecting
an arrest.

 

By
the Blockburger rule, the offenses were not the same.  There was no violation of the Double Jeopardy
Clause.

 

Id. at 900; see also
Blockburger, 284 U.S. at 304, 52 S. Ct. at 182 (AThe applicable rule is
that, where the same act or transaction constitutes a violation of two distinct
statutory provisions, the test to be applied to determine whether there are two
offenses or only one, is whether each provision requires proof of a fact which
the other does not.@).





[9]Section 12.42(c)(2) does
not apply here because Appellant was not convicted of an offense listed under
that subsection.  See id. ' 12.42(c)(2).





[10]See supra note 9.